AB:FJN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | C O M P L A I N T |
| - against - | (18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(iii) and 1114) |
| RONELL WATSON, | 18-M-1191 |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

JOSE CHARRIEZ, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

On or about December 8, 2018, within the Eastern District of New York and elsewhere, the defendant RONELL WATSON did knowingly and intentionally attempt to kill an officer and employee of an agency of the United States Government, to wit: a Special Agent of the Federal Bureau of Investigation, while such officer and employee was engaged in and on account of the performance of official duties.

(Title 18, United States Code, Section 1114)

On or about December 8, 2018, within the Eastern District of New York, the defendant RONELL WATSON did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence, to wit: a violation of 18 U.S.C. § 1114, and did knowingly and intentionally possess such firearms in furtherance of that crime of violence, one or more of which firearms were discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 924(c)(1)(A)(iii))

The source of your deponent's information and the grounds for his belief are as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2007. I have been involved in the investigation of numerous cases involving violent crimes and the use of firearms. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of documents, conversations I have had with others about this matter, and my training and experience. Unless specifically indicated, all conversations and statements described in this affidavit are related in sum and substance and in part only. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not described all of the relevant facts and circumstances of which I am aware.

2. On or about December 8, 2018, a Special Agent of the FBI (the "FBI Agent") was on duty in Canarsie in Brooklyn, New York. At approximately 3:20 p.m., the FBI Agent was parked in an unmarked car on Canarsie Road, which is a one-way street. As the FBI Agent sat in his parked car, he encountered a dark-colored BMW M5 sedan (the "BMW") driving down Canarsie Road in the wrong direction.

3. According to surveillance video recovered from the scene, the driver of the BMW, who was later identified as defendant RONELL WATSON ("WATSON"), parked the BMW near the front of the FBI Agent's car, partially obstructing the FBI Agent's ability to drive forward. WATSON then exited the BMW and approached the driver side door of the FBI Agent's car with one hand inside the front pocket of his hooded sweatshirt. The FBI Agent then began to maneuver his car around the BMW. As he did so, WATSON

pulled out a firearm and began firing at the FBI Agent as the FBI Agent drove away. The FBI Agent was hit by at least one round and suffered a gunshot wound to his torso. The FBI Agent then exited his car, drew his firearm, and returned fire at WATSON, who was standing near the BMW. The FBI Agent struck the BMW with multiple rounds and struck WATSON with at least one round. WATSON then fled the scene in the BMW. The FBI Agent then returned to his car and called for assistance.

4. According to surveillance video, at approximately 3:45 p.m., WATSON drove the BMW to an auto body shop located on Remsen Avenue in Brooklyn, New York, approximately two miles from the location of the shooting. The surveillance video shows WATSON exiting the BMW with what appeared to be a gunshot wound to his left hand.

5. According to surveillance video, at approximately 3:55 p.m., a vehicle driven by an individual associated with WATSON ("Individual 1") arrived near the auto body shop in a sedan (the "Sedan"). WATSON entered the front passenger seat of the Sedan wearing what appeared to be a makeshift bandage on his left hand. The Sedan then drove away from the auto body shop. The BMW was left behind at the auto body shop.

6. According to surveillance video, at approximately 4:00 p.m., the Sedan arrived at Kingsbrook Jewish Medical Center. WATSON and Individual 1 entered the hospital together. WATSON was wearing what appeared to be the same makeshift bandage on his left hand that he had been wearing in the video of the auto body shop.

7. WATSON told law enforcement officers at the hospital that he had been driving to his home, which is on Canarsie Road in the vicinity of the shooting. WATSON falsely claimed that when he got out of his car other individuals were engaged in

a gun fight and that he was struck as a bystander. Law enforcement officers at the hospital then overheard WATSON call a female on a cellular telephone. WATSON told the female, in sum and substance and in part, to go to the house and "get the jewelry and get rid of it."

8. A review of the BMW revealed multiple bullet holes. A review of the interior of the BMW revealed what appeared to be fresh blood inside the vehicle. A review of the Sedan also revealed what appeared to be fresh blood inside that vehicle.

WHEREFORE, your deponent respectfully requests that the defendant RONELL WATSON be dealt with according to law.

_____
JOSE CHARRIEZ
Special Agent, Federal Bureau of Investigation

Sworn to before me this
10th day of December, 2018

_____
THE HONORABLE STEVEN L. TISCIONE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK